**KING & SPALDING LLP**
ALBERT GIANG (SBN 224332)
  *agiang@kslaw.com*
ARWEN R. JOHNSON (SBN 247583)
  *arwen.johnson@kslaw.com*
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone:  (213) 443-4355
Facsimile:   (213) 443-4310

**CALDWELL HAMMER LLP**
JEFFREY M. HAMMER (SBN 264232)
  *jhammer@caldwellhammer.com*
633 West Fifth Street, Suite 1710
Los Angeles, California 90071
Telephone:  (213) 712-8078

Attorneys for Defendant
AMERICAN INCOME LIFE
INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATALIE BELL, GISELE MOBLEY, and ASHLY RAI, AND JOHN TURNER, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY, an Indiana Corporation, NATIONAL INCOME LIFE INSURANCE COMPANY; and Does 1-20,<br><br>Defendants. | Case No. 2:20-CV-07046-MWF-PJW<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY ACTION**<br><br>**[Motion to Sever and Transfer the Eighth and Ninth Causes of Action; Motion to Dismiss Non-California Based Claims; Declarations of Kevin Donaldson and Jeffrey Hammer with Exhibits and [Proposed] Order filed concurrently herewith]**<br><br>Hon. Michael W. Fitzgerald<br>Courtroom 5A<br><br>**Date:   March 8, 2021**<br>**Time:   10:00 a.m.** |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE** that on March 8, 2021, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Michael W. Fitzgerald, located in the First Street Courthouse, 350 West Fifth Street, Courtroom 5A, Los Angeles, CA 90012, Defendant American Income Life Insurance Company ("AIL") will and hereby does move this Court for an order compelling individual arbitration of all claims asserted by Plaintiffs Gisele Mobley, Ashly Rai, and Natalie Bell (collectively, "Plaintiffs") in this action.

    This alternative Motion is made under Federal Rules of Civil Procedure 12(b)(1) and (6), and pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), on the grounds that each Plaintiff agreed to arbitrate her respective causes of action asserted in the operative Complaint on an individual, non-class basis, as part of broad arbitration agreements between each Plaintiff, her State General Agent, and AIL.  All such claims should therefore be compelled to individual arbitration, and this action should be dismissed or, in the alternative, stayed in its entirety.

    This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the separately-filed Motion to Sever and Transfer the Eighth and Ninth Causes of action and alternative Motion to Dismiss Non-California Based Claims; the Declarations of Kevin Donaldson and Jeffrey M. Hammer and the exhibits thereto; all of the pleadings and other documents on file in this case; all other matters of which the Court may take judicial notice; and any further argument or evidence that may be received by the Court at the hearing.

1       Pursuant to Local Rule 7-3, counsel for AIL conferred by telephone with

2  counsel for Plaintiffs regarding the grounds raised in this Motion on November 17,

3  2020, but were unable to reach a resolution regarding these issues.  (Declaration of

4  Jeffrey M. Hammer ("Hammer Decl."), ¶¶ 10-11.)

5

6  DATED:  December 23, 2020     KING & SPALDING LLP

7            ALBERT GIANG
             ARWEN R. JOHNSON

8

9            CALDWELL HAMMER LLP
             JEFFREY M. HAMMER

10

11            By   /s/ Albert Giang

12               ALBERT GIANG

13

14            Attorneys for Defendant
              AMERICAN INCOME LIFE

15            INSURANCE COMPANY

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................... 3

    A.    AIL ................................................................................................ 3

    B.    Each Plaintiff Signed A Contract with An Arbitration Provision .......... 4

        1.    Gisele Mobley.................................................................... 5

        2.    Ashly Rai .......................................................................... 7

        3.    Natalie Bell ....................................................................... 8

    C.    Plaintiffs Ignored Their Arbitration Agreements and Filed This Action ....... 8

III.    PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR DISPUTES WITH AIL ON AN INDIVIDUAL BASIS ................................. 9

    A.    The Arbitration Agreement Common to Each Plaintiff is Governed by the Federal Arbitration Act ............................. 10

    B.    Plaintiffs Are Bound by Valid Agreements to Arbitrate .................... 12

    C.    Plaintiffs' Claims Fall Within the Broad Scope of the Arbitration Agreement ....... 16

    D.    Classwide Arbitration Is Not Permissible........................................... 18

    E.    Request for Stay Pending Arbitration ................................................. 19

IV.    CONCLUSION ...................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AdvancePCS Health L.P.*,
    172 S.W.3d 603 (Tex. 2005) ............................................................... 16

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995) ........................................................................... 11

*American Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ........................................................................... 18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ...............................................................9, 12, 18

*In re Border Steel, Inc.*,
    229 S.W.3d 825 (Tex. App. 2007) ..................................................... 12

*Cantella & Co., Inc. v. Goodwin*,
    924 S.W.2d 943 (Tex. 1996) .............................................................. 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................... 17

*In re Choice Homes*,
    174 S.W.3d 408 (Tex. App. 2005) ..................................................... 10

*CIGNA HealthCare of St. Louis, Inc. v. Kaiser*,
    294 F.3d 849 (7th Cir. 2002) ............................................................. 19

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) (per curiam) ........................................................ 11

*Corpman v. Prudential-Bache Secs.*,
    Inc., 907 F.2d 29, 31 (3d Cir. 1990) .................................................. 19

*DiGiacomo v. Ex'pression Ctr. for New Media Inc.*,
    No. C 08-01768 MHP, 2008 WL 4239830 (N.D. Cal. Sept. 15, 2008) ................................................................................................... 15

*DIRECTV, Inc. v. Imburgia*,
    577 U.S. 47 (2015) ..................................................................... 10, 12

*Edwards v. Doordash, Inc.*,
   888 F.3d 738 (5th Cir. 2018) ........................................................ 13, 16

*Edwards v. Doordash, Inc.*,
   No. CV H-16-2255, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) ............... 13, 16

*Edwards v. Doordash, Inc.*,
   No. CV H-16-2255, 2016 WL 7852532 (S.D. Tex. Dec. 8, 2016) ............... 12, 16

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ........................................................ 18

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak
   Street*,
   35 Cal. 3d 312 (1983) ........................................................ 12

*Esagh v. Terminix Int'l Co. Ltd. P'ship*,
   No. 1:11cv022 AWI DLB, 2012 WL 1669416 (E.D. Cal. May 11,
   2012) ........................................................ 11

*EZ Pawn Corp. v. Mancias*,
   934 S.W.2d 87 (Tex. 1996) ........................................................ 13

*Fields v. Legacy Health Sys.*,
   413 F.3d 943 (9th Cir. 2005) ........................................................ 12

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ........................................................ 12

*Green Tree Fin. Corp. Ala. v. Randolph*,
   531 U.S. 79 (2000) ........................................................ 10

*Grigson v. Creative Artists Agency L.L.C.*,
   210 F.3d 524 (5th Cir. 2000) ........................................................ 14, 15

*Hill v. Asset Acceptance, LLC*,
   No. 13-CV-1718-BEN-BLM, 2014 WL 1289578 (S.D. Cal. Mar.
   27, 2014) ........................................................ 20

*Hurley v. Emigrant Bank*,
   No. 3:19-CV-0011-B, 2019 WL 5537330 (N.D. Tex. Oct. 25, 2019) ............... 18

-iii-

Case No. 2:20-CV-07046-MWF-PJW
NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY ACTION

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
   No. 5:16-CV-02805-EJD, 2017 WL 2727874 (N.D. Cal. Feb. 14,
   2017) ................................................................................................................ 19

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012) .......................................................................................... 9

*In re McKinney*,
   167 S.W.3d 833 (Tex. 2005) ........................................................................... 13

*Min Soon Lee v. BMW of N. Am., LLC*,
   No. 8:19-1722-JVS-ADS(x), 2020 WL 2405253 (C.D. Cal. Apr. 10,
   2020) ................................................................................................................ 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ............................................................................... 9, 10, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983), *superseded by statute on other grounds* ............................... 10

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal.4th 459 (1992) ........................................................................................ 12

*Norman v. Travelers Ins. Co.*,
   No. 3:19-CV-2351-S-BN, 2019 WL 6250782 (N.D. Tex. Nov. 22,
   2019) ................................................................................................................ 19

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal.4th 223 (2012) ................................................................................. 13, 16

*In re Polymerica, LLC*,
   296 S.W.3d 74 (Tex. 2009) .............................................................................. 13

*Superior Energy Servs., LLC v. Cabinda Gulf Oil Co.*,
   635 F. App'x 375 (9th Cir. 2016) ..................................................................... 15

*Torbit, Inc. v. Datanyze, Inc.*,
   No. 5:12-CV-05889-EJD, 2013 WL 572613 (N.D. Cal. Feb. 13,
   2013) ................................................................................................................ 14

*United Steelworkers of Am. v. Warrior & Gulf. Nav. Co.*,
   363 U.S. 574 (1960) ......................................................................................... 18

*Weiss v. Vidyo, Inc.*,
   No. 11-cv-05663-NC, 2012 WL 13042819 (N.D. Cal. Feb. 1, 2012) ................. 18

**Statutes**

9 U.S.C. § 2 ............................................................................................................. 9, 11

9 U.S.C. § 3 ................................................................................................................. 19

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ..................................................... 6, 7, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION[1]

Plaintiffs originally filed a sprawling Complaint that attempted to stitch together different claims, asserted by unrelated plaintiffs alleging disparate misconduct, spread across different states with varying wage-and-hour laws, involving two separate companies that provide insurance products to distinct jurisdictions.  Even though one New York plaintiff and one New York defendant were recently dismissed,[2] the threshold question still raised by the Complaint is which court or jurisdiction is best suited to first hear threshold challenges to different claims implicating various out-of-state laws in the first instance.

As set forth in the concurrent Motion to Sever and Transfer the Eighth and Ninth Causes of Action ("Motion to Transfer"), Defendant American Income Life Insurance Company ("AIL") believes that the proper court is the Western District of Pennsylvania, which was the first-filed court to consider the Fair Labor Standards Act ("FLSA") and state specific wage-and-hour claims alleging unpaid wages and training on behalf of a purported nationwide class/collective.  *See Berry et al. v. American Income Life Insurance Company*, Case No. 2:20-cv-0010-LPL (W.D.

---

[1] AIL has filed three motions in response to the Complaint.  AIL believes it makes sense for the Court to consider the motions in a particular order, as granting certain relief requested in one motion may make it unnecessary for the Court to consider alternative relief requested in another motion.  Accordingly, AIL respectfully requests that the Court consider the motions in the following order:  (1) Motion to Sever and Transfer the Eighth and Ninth Causes of Action; (2) Motion to Dismiss Non-California Based Claims; and (3) Motion to Compel Individual Arbitration and Dismiss or, Alternatively, Stay Action.

[2] The Complaint originally included a New York state law claim against Defendant National Income Life Insurance Company ("NILICO") by Plaintiff John Turner, a New York resident.  (Compl. ¶¶ 11, 146-50.)  On December 18, 2020, Plaintiffs voluntarily dismissed NILICO and Turner as parties and all claims asserted against NILICO.  (ECF No. 23.)

Pa.).  Indeed, that very court recently compelled individual arbitration of related claims (including purported collective claims under the FLSA) brought against AIL, applying identical arbitration language as at-issue here.  (Hammer Decl., Exs. C-D.) Therefore, this matter—including this alternative motion to compel arbitration ("Arbitration Motion")—should be deferred and transferred to that first-filed court to ensure consistency of rulings and treatment.

Moreover, if the Court considers the alternative Motion to Dismiss Non-California Based Claims and grants AIL's request to dismiss Plaintiffs' non-California based claims for lack of personal jurisdiction, it would leave remaining only (1) Plaintiffs Bell and Rai's California wage-and-hour claims (causes of action 1-6),[3] and (2) Plaintiffs Bell and Rai's California-based FLSA claim.  Those claims are subject to enforceable individual arbitration agreements as fully explained below.

While this Court need not reach this Arbitration Motion if the matter is transferred,[4] to be clear, Plaintiffs' claims must be compelled to individual arbitration, regardless of which court considers the Arbitration Motion.  Like the plaintiffs in *Berry*, Plaintiffs in this matter agreed to resolve disputes through individual arbitration.  Prospective agents who apply to sell insurance products from AIL sign agent contracts containing arbitration agreements, which have been enforced by different courts.  Here, each Plaintiff is bound by identical arbitration language that:

---

[3] A hearing on the motion for final approval of the California class-wide settlement is set for January 7, 2021.  *See Joh v. American Income Life Ins. Co.*, Case No. 3:18-cv-06364-TSH (N.D. Cal.).

[4] Causes of action 8 and 9 are sufficiently discrete and can be severed from alleged California claims because they involve different legal claims, apply other state and federal laws, and implicate distinct classes.  *See generally* Motion to Sever and Transfer the Eighth and Ninth Causes of Action.

- Appears under the capitalized and bolded heading "**ARBITRATION**";

- Invokes the Federal Arbitration Act ("FAA"), which strongly favors resolution of disputes through arbitration;

- Covers a broad scope including "all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract" or "any alleged violation of any state or federal statute, regulation, law or order of any kind"; and

- Requires submission of all disputes to binding individual arbitration with the American Arbitration Association ("AAA") and pursuant to an express class and collective action waiver.

Despite agreeing to arbitrate any disputes, Plaintiffs refused to honor their agreements when they filed this putative class and collective action for allegedly misclassifying them as independent contractors.  But this Court need not reach the merits of those claims because, as a threshold jurisdictional matter, the Federal Arbitration Act ("FAA") requires that all such claims be submitted to an arbitrator as the parties agreed.  Accordingly, AIL bring this motion to compel Plaintiffs to individual arbitration of their respective claims in the Complaint.

## II.    FACTUAL BACKGROUND

### A.    *AIL*

AIL is an international life insurance company headquartered in Texas that provides life, accident, and supplemental health insurance products to families and individuals.  (Declaration of Kevin Donaldson ("Donaldson Decl."), ¶ 2.)  AIL insures families and individuals in many states.  (*Id.*)

For AIL, agent applications and contracts like those at issue are generated in Texas, sent between other states and Texas, and electronically stored in agent files in AIL's home offices in Texas.  In accordance with AIL policy, insurance applications from out-of-state customers are sent to Texas.  AIL policy underwriting is done in Texas, and policies are issued in Texas.  Agent commission payments are

determined in Texas, and tax forms reflecting payments to agents are issued from Texas.  (*Id.*, ¶ 13.)

### B.   Each Plaintiff Signed A Contract with An Arbitration Provision

Prospective agents who seek to sell AIL insurance products must sign and submit onboarding documents.  Individuals may sign and submit different agent applications and contracts over the course of their relationship with AIL, depending on their personal circumstances and sales performance.  Agent applications and contracts are submitted to, approved by, and countersigned by the local State General Agents[5] ("SGAs") with whom individuals affiliate for purposes of selling AIL products.  Depending on how materials are submitted, SGAs can approve and sign agent applications and contracts electronically through the Agent Appointment Automation System ("AAA System") or by hand.  When an individual completes the regulatory requirements to sell insurance (e.g., state licensure) and sells their first policy, AIL signs the agent contract.  (Donaldson Decl., ¶ 5.)

Agent applications and contracts included in onboarding materials set forth the basic nature and terms of the individual's relationship with AIL, including that the individual:

- "is not an employee of the Company; rather, the agent is an independent contractor" (p. 3);
- has access to "optional training and/or sales meetings [that] may be held by the State General Agent," as well as advice and assistance from other independent sales agents (p. 1);
- may receive, and must hold in confidence, proprietary information (p. 1);

---

[5] A State General Agent is a senior and licensed independent contractor operating his or her own business with whom other individuals can affiliate, including for assistance or training regarding selling insurance products.

- "shall be responsible for all expenses" and "furnish his or her own means of transportation [and] office or place of business" (p. 1);
- will be paid only in earned commissions from sales of insurance products (pp. 1-2); and
- will resolve disputes through individual arbitration (p. 3).

(*See, e.g.*, Donaldson Decl., Ex. F at 1-3.)  Here, each Plaintiff alleges having been hired, having been trained, and having a compensable relationship with AIL,[6] none of which would have been possible but for agent applications and contracts.

### 1.   Gisele Mobley

Plaintiff Gisele Mobley alleges that she is a resident of Florida, started her relationship with "Defendants" in November 2018, and ended that relationship in January 2019.  (Compl., ¶ 9.)  According to the most recent agent contract in this period, AIL, at the initiation of a local SGA, emailed Plaintiff Mobley an invitation from its AAA System, inviting her to complete onboarding paperwork and providing her with a link to the AAA System.  (Donaldson Decl., ¶ 7.)  She signed the agent contract using the AAA system on November 19, 2018.  (*Id.* ¶ 8.)  .

The November 19, 2018 agent contract signed by Plaintiff Mobley and her State General Agent includes an arbitration agreement, which is sectioned off from the other provisions and clearly entitled "**ARBITRATION**."  (*Id.*)  Mobley's signature appears under the following acknowledgment in all capital letters:  "I HEREBY ACKNOWLEDGE THAT I HAVE READ THE FOREGOING CONTRACT IN ITS ENTIRETY, INCLUDING THE ARBITRATION PROVISION AND THE SPECIAL NOTICE OF ACKNOWLEDGEMENT

---

[6] Although Plaintiffs' Complaint initially failed to distinguish between "Defendants" (Compl. ¶¶ 8-11)—which are different companies servicing different jurisdictions— Defendant NILICO has since been dismissed from this action.  (ECF No. 23.) Plaintiffs Mobley, Rai, and Bell concede that they resided outside of New York during the relevant periods (Compl. ¶¶ 8-10), and they never applied to sell insurance products in New York for NILICO.  (Donaldson Decl. ¶¶ 7-12.)

ATTACHED HERETO AS EXHIBIT A, AND AGREE TO ALL CONTRACT TERMS." (*Id.*)  The arbitration agreement provides in relevant part:

> [A]ll disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract, any alleged violation of any state or federal statute, regulation, law or order of any kind, and/or the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for wrongful termination, discrimination, wage-and-hour violations, or any other claim based on an alleged employment relationship), regardless of whether they are brought by or against the Company, the Agent, or the State General Agent, except a dispute relating to the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration under the substantive rules of the Federal Arbitration Act ("FAA"), to be administered by the American Arbitration Association ("AAA") in accordance with its Commercial Rules then in effect.  The arbitration shall take place in the AAA office closest to the domicile of the Agent.  The Company shall pay any AAA filing, administrative, and arbitrator fee(s).  Arbitration shall be on an individual, not a class, collective, representative, or private attorney general basis.  If this class-action waiver is deemed unenforceable, the entire agreement to arbitrate shall not apply.  The arbitrator shall have the power to award any relief that would otherwise be available in court, including attorney's fees, if permitted by statute, or injunctive or other equitable relief. . . .  The parties acknowledge that this Contract involves interstate commerce, and all issues relating to arbitration or the enforceability of this agreement to arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.  Aside from issues relating to arbitration or the enforceability of this agreement to arbitrate, all issues relating to any dispute, claim, or controversy arising out of or relating to this Contract shall be governed and decided in accordance with the internal laws of the State of Texas, without regard to its choice-of-law rules.

As reflected above, the arbitration agreement acknowledges that the Agent Contract involves interstate commerce, and that all issues relating to arbitration or the enforceability of the arbitration agreement will be governed by the FAA (with any remaining issues relating to arbitration being decided under Texas law).  (*Id.*) The agreement requires arbitration to proceed "on an individual, not a class [or] collective" basis.  (*Id.*)  It also sets out the procedures for arbitrating any dispute.

-6-

Case No. 2:20-CV-07046-MWF-PJW
NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY ACTION

The arbitration agreement is mutual and requires parties to arbitrate any claims that they may have against each other under the AAA's Commercial Rules then in effect. (*Id.*)  The agreement further provides that arbitration will take place at the AAA office closest to each Plaintiff's domicile and that AIL, not Plaintiff, will pay any AAA filing, administrative, and arbitrator fees.  (*Id.*)  The agreement also conforms the scope of the arbitrator's power to award relief, including attorneys' fees if permitted by statute, to that which would otherwise be available in court.  (*Id.*)  This arbitration language already has been enforced by the *Berry* Court with respect to FLSA collective action and state specific wage and hour claims.  (Hammer Decl., Exs. C-D.)

### 2. Ashly Rai

Plaintiff Ashly Rai alleges that she is a resident of California, started her relationship with "Defendants" in February 2018, and ended that relationship in July 2018.  (Compl., ¶ 10.)  According to the most recent agent contract in this period, AIL, at the initiation of a local SGA, emailed Plaintiff Rai an invitation from its AAA System, inviting her to complete onboarding paperwork and providing her with a link to the AAA System.  (Donaldson Decl., ¶ 9.)  She signed the agent contract using the AAA system on March 27, 2018.  (*Id.* ¶ 10.)

The March 27, 2018 agent contract signed by Plaintiff Rai and her State General Agent includes an arbitration agreement, which is sectioned off from the other provisions and clearly entitled "**ARBITRATION**."  (*Id.*)  Rai's signature appears under the following acknowledgment in all capital letters:  "I HEREBY ACKNOWLEDGE THAT I HAVE READ THE FOREGOING CONTRACT IN ITS ENTIRETY, INCLUDING THE ARBITRATION PROVISION AND THE SPECIAL NOTICE OF ACKNOWLEDGEMENT ATTACHED HERETO AS EXHIBIT A, AND AGREE TO ALL CONTRACT TERMS."  (*Id.*)  Rai's arbitration agreement contains identical language to Mobley's above.

### 3. Natalie Bell

Plaintiff Natalie Bell alleges that she is a resident of California, started her relationship with "Defendants" in October 2017, and ended that relationship in February 2018.  (Compl., ¶ 8.)  According to the most recent agent contract in this period, AIL, at the initiation of a local SGA, emailed Plaintiff Bell an invitation from its AAA System, inviting her to complete onboarding paperwork and providing her with a link to the AAA System.  (Donaldson Decl., ¶ 11.)  She signed the agent contract using the AAA system on December 27, 2017.  (*Id.* ¶ 12.)

The December 27, 2017 agent contract signed by Plaintiff Bell and her State General Agent includes an arbitration agreement, which is sectioned off from the other provisions and clearly entitled "**ARBITRATION**."  (*Id.*)  Bell's signature appears under the following acknowledgment in all capital letters:  "I HEREBY ACKNOWLEDGE THAT I HAVE READ THE FOREGOING CONTRACT IN ITS ENTIRETY, INCLUDING THE ARBITRATION PROVISION AND THE SPECIAL NOTICE OF ACKNOWLEDGEMENT ATTACHED HERETO AS EXHIBIT A, AND AGREE TO ALL CONTRACT TERMS."  (*Id.*)  Bell's arbitration agreement contains identical language to Mobley's above.

### C. *Plaintiffs Ignored Their Arbitration Agreements and Filed This Action*

Despite being bound by individual arbitration agreements, Plaintiffs filed this putative class and collective action on August 5, 2020.  The gravamen of the Complaint is that each Plaintiff "was hired by Defendant[]"; was misclassified as an independent contractor "when the true classification should have been that of 'employee'"; and was subject to "illegal employment practices resulting in violations of the Fair Labor Standards Act, the California Labor Code and California Business and Professions Code and other state laws against employees of Defendant[]."  (Compl., ¶¶ 1-2, 8-10.)  Plaintiffs allege that, as a result of this purported error, AIL failed to pay proper wages and overtime, provide meal and rest

-8-

breaks, pay all wages due upon termination/discharge, provide correct itemized statements, and pay expense reimbursements.  (Compl., ¶¶ 95-172 (asserting nine causes of action).)  Plaintiffs allege that they were subject to "Defendant['s] numerous policies, practices, and procedures."  (Compl., ¶ 40.)  Plaintiffs "seek relief on behalf of themselves and all similarly situated employees," and purport to assert the first through ninth causes of action in the Complaint on an individual, class, and/or collective basis.  (*Id.*, ¶¶ 3, 95-172.)

Plaintiffs did not serve the Complaint on AIL until September 25, 2020, when counsel for AIL signed a Notice and Acknowledgement waiving formal service of process.  (ECF No. 17.)  Prior to bringing this motion, during the meet-and-confer process, counsel for AIL explained that it intended to enforce arbitration agreements with each remaining Plaintiff.  (Hammer Decl., ¶ 10.)  Because each Plaintiff is required to arbitrate disputes on an individual, non-class basis, AIL brings the instant motion to compel.

## III.   PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR DISPUTES WITH AIL ON AN INDIVIDUAL BASIS

Congress enacted the FAA to reverse the "widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The Supreme Court has repeatedly emphasized that courts are obligated to enforce arbitration agreements as written because the FAA "'reflects an emphatic federal policy in favor of arbitral dispute resolution.'"  *See, e.g.*, *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 20 (2011)); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA provides the mechanism for courts to enforce arbitration agreements through "an affirmative

order to engage in arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983), *superseded by statute on other grounds*; *see also* 9 U.S.C. § 4.  Given the strong federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25.  The party *opposing* enforcement of the arbitration agreement bears the heavy burden of proving that the claims are not subject to arbitration.  *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Under the FAA, a court must compel arbitration if it finds that:  (1) the transaction involves interstate commerce and therefore comes within the FAA's reach; (2) a written arbitration agreement exists; and (3) the dispute falls within the scope of the agreement.  *See Mitsubishi*, 473 U.S. at 626-28.  Each prong is easily established here.

### A.    The Arbitration Agreement Common to Each Plaintiff is Governed by the Federal Arbitration Act

The arbitration agreement common to each Plaintiff is governed by the FAA, and provides that "all issues relating to arbitration or the enforceability of this agreement to arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*"  (Donaldson Decl., Exs. F at 3; G at 3; H at 3.)  The parties' express election of the FAA controls.  *See Mitsubishi*, 473 U.S. at 626 ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53-54 (2015) ("[P]arties to an arbitration contract [have] considerable latitude to choose what law governs some or all of its provisions."); *In re Choice Homes*, 174 S.W.3d 408, 412 (Tex. App. 2005) ("When parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce.").

In addition to this express language, the FAA governs in light of the broad reach of the FAA and its preemption of state law where interstate commerce is

concerned.  The FAA applies to all "contract[s] evidencing a transaction involving commerce," 9 U.S.C. § 2, which is defined broadly to include transactions "affecting" interstate commerce.  *Id*.; *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam).  This reflects Congress's intent to exercise its Commerce Clause powers to the fullest, and the reach of the FAA is therefore as expansive as that of the Commerce Clause.  *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995); *see also Citizens Bank*, 539 U.S. at 56 (noting that "involving commerce" signals "the broadest permissible exercise of Congress's Commerce Clause power" and sweeps in activity that "affect[s] interstate commerce").

Here, Plaintiffs allege that AIL "maintains its principal place of business in Waco, Texas," but is "doing business nationwide, including in California, Florida, and New York."  (Compl., ¶¶ 16-17.)  Interstate commerce is indisputably "affected" by an international insurance agency which offers insurance products in many states.  (Donaldson Decl., ¶ 2.)  The contracts at issue here involve individuals in California or Florida, their local SGAs, and a company based in Texas, whereby that company has agreed to pay agent commissions, provide certain materials, and have its life insurance products sold to customers in California or Florida.  (*Id.*, ¶¶ 2, 13.)  In accordance with AIL policy, insurance applications from out-of-state customers are sent to Texas, policy underwriting is done in Texas, and policies are issued in Texas.  (*Id.* ¶ 13.)  Agent commission payments are determined in Texas, and tax forms reflecting payments to agents are issued from Texas.  (*Id.*)

A contract relating to the sale of life insurance through interstate commerce is sufficient to bring the arbitration agreement within the FAA's scope.  *See, e.g.*, *Allied-Bruce*, 513 U.S. at 282 (explaining that the FAA governed an arbitration agreement between a pest control company and a customer because the company was a multistate business and the termite-treating materials came from out of state); *Esagh v. Terminix Int'l Co. Ltd. P'ship*, No. 1:11cv022 AWI DLB, 2012 WL

-11-

1669416, at *2 (E.D. Cal. May 11, 2012) (holding that the multistate nature of defendant's business is sufficient to meet the commerce requirement).

### B.    Plaintiffs Are Bound by Valid Agreements to Arbitrate

"[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (internal citations omitted); *DIRECTV*, 577 U.S. at 47 (noting that "lower courts must follow this Court's holding in *Concepcion*").  In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Here, the choice-of-law provision within the arbitration agreement indicates that Texas law governs arbitration issues not governed by the FAA.[7]  (Donaldson Decl., Exs. F at 4; G at 4; H at 4.)  *See, e.g.*, *First Options*, 514 U.S. at 944; *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (federal courts sitting in diversity look to the law of the forum state when making choice-of-law determinations); *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 479 (1992) (parties' contractual choice of law applies as long as chosen law bears substantial relationship to the parties or their transaction or there is any other reasonable basis for the parties' choice); *accord Edwards v. Doordash, Inc.*, No. CV H-16-2255, 2016 WL 7852532, at *5 (S.D. Tex. Dec. 8, 2016) ("In determining which state's law should apply here, the court typically looks to the choice-of-law

---

[7] Both Texas and California law have strong public policies that favor arbitration of disputes and that require enforcement of this arbitration agreement.  *In re Border Steel, Inc.*, 229 S.W.3d 825, 832 (Tex. App. 2007) (Texas law presumes the existence of an arbitration agreement, and any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 323 (1983) (citation omitted) (in light of the strong public policy in California favoring arbitration, any "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration").

provision in the contract decided by the parties."), *report and recommendation adopted*, No. CV H-16-2255, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017), *aff'd*, 888 F.3d 738 (5th Cir. 2018).

Applying state law contract formation principles,[8] each Plaintiff is bound to the arbitration agreement she signed.  A party who signs a document is conclusively presumed to have read and understood its contents.  *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996); *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005); *accord Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 235 (2012).

Plaintiffs Mobley and Rai allege that they became full-fledged "Agents" appointed to sell AIL insurance products.  (Compl., ¶¶ 9-10.)  Their agent contracts reflect signatures from each Plaintiff, her respective State General Agent, and an AIL representative.  (Donaldson Decl., ¶ 5.)  Accordingly, Plaintiffs Mobley and Rai are bound by the arbitration agreement in their respective agent contracts.

Plaintiff Bell does not allege that she became a full-fledged agent, but does allege that "[s]he was hired by Defendant[] as a Trainee."  (Compl., ¶ 8.)  Plaintiff Bell's application materials also included an agent contract, which both Plaintiff Bell and her State General Agent signed.  While the agent contract was not signed by an AIL representative, a signature is not required for AIL to compel arbitration.  *See generally In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) ("[N]either the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties." (quotation marks omitted)); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 745 (5th Cir. 2018) ("[A]n arbitration agreement [reviewed under California law] can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided

---

[8] While Texas contract law governs pursuant to the choice-of-law provision in the arbitration agreement, California law on contract formation is in accord.

that the party seeking enforcement has performed or offered to do so." (quotation marks omitted)).

Here, there is no reasonable dispute that Plaintiff Bell and her State General Agent signed an agent contract with an express arbitration agreement, signifying their consent to arbitrate disputes.  Equitable doctrines permit non-signatories like AIL to compel arbitration against signatories like Plaintiff Bell.  Among other things, Plaintiff Bell is equitably estopped from refusing to arbitrate, where all of her claims are premised on an alleged compensable relationship with AIL only made possible by an agent contract; her claim of being misclassified as an independent contractor arises out of an agent contract setting forth that very classification status (*see* Donaldson Decl., Ex. H at 3 ("[T]he agent is an independent contractor.""); and her allegations about training and compensation implicate agent contract terms on those very topics (*see id.*, Ex. H at 1-2).  *See, e.g.*, *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (applying equitable estoppel under Texas law and explaining "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate" (quotation marks omitted)); *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013) ("In this context, where a non-signatory seeks to compel a signatory to arbitrate, the doctrine [of equitable estoppel] operates to protect the vitality of arbitration agreements and federal arbitration policy.").

Further, even though Plaintiff Bell attempts to attribute training misconduct to non-signatory AIL, she signed an agent contract attributing training to "the State General Agent," who also signed.  (Donaldson Decl., Ex. H at 1 ("Additionally, from time-to-time optional training and/or sales meetings may be held by the State General Agent with whom the Agent is affiliated in order to acquaint the Agent with new products, discuss sales techniques, exchange ideas with other agents, and

provide general sales support and motivation.")); *see Grigson*, 210 F.3d at 528 ("it would be especially inequitable [not to enforce an arbitration agreement] where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant"); *Superior Energy Servs., LLC v. Cabinda Gulf Oil Co.*, 635 F. App'x 375, 376 (9th Cir. 2016) (concluding that the "district court erred in rejecting Superior's contention that it was an intended third-party beneficiary of the Cabinda-Operatec contract," where "Operatec's role was to process payments from Cabinda to Superior"); *Min Soon Lee v. BMW of N. Am., LLC*, No. 8:19-1722-JVS-ADS(x), 2020 WL 2405253, at *4 (C.D. Cal. Apr. 10, 2020) (concluding that "BMW NA, although not a signatory to the Lease Agreement, is an intended third-party beneficiary of the Lease Agreement" between the plaintiff and dealership).  Because Plaintiff Bell's fundamental theory of the case implicates the existence, validity, and interpretation of an agent contract with an arbitration agreement, and her allegations about training misconduct are intertwined with the SGA signatory, she is bound to arbitrate her claims.

By signing, each Plaintiff manifested consent to individual arbitration. *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (rejecting argument that plaintiff who signed an arbitration agreement within a client agreement could avoid its application, noting the "legal presumption that a party who signs a contract knows its contents").  In addition, the arbitration agreement was labeled clearly, under the capitalized and bolded heading "**ARBITRATION**," and just above the spot where each Plaintiff signed, there was an additional statement, in all capital letters, requiring each Plaintiff to expressly acknowledge that she read the arbitration agreement and agreed to its terms.  (*Id.*, Exs. F at 4; G at 4; H at 4.)

Finally, the arbitration agreement shared by each Plaintiff incorporates AAA rules, which have been repeatedly affirmed by courts in this Circuit and the Fifth Circuit.  *See, e.g.*, *DiGiacomo v. Ex'pression Ctr. for New Media Inc.*, No. C 08-

01768 MHP, 2008 WL 4239830, at *6 (N.D. Cal. Sept. 15, 2008) ("the fee structure under the Commercial Rules of the AAA has been held not to be unconscionable by other courts, in part because they provide for the waiver of fees in circumstances of need" or "in cases of financial hardship"); *Edwards*, 2016 WL 7852532, at *1 (enforcing arbitration agreement that incorporated "commercial rules of the American Arbitration Association (AAA)" because they "provide for a neutral arbitrator, remedies, adequate discovery, and a written arbitration award"), *report and recommendation adopted*, No. CV H-16-2255, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017), *aff'd*, 888 F.3d 738 (5th Cir. 2018).  The arbitration agreement that each Plaintiff signed is particularly broad and mutual, because it requires all parties to a dispute (including any State General Agent or AIL) to submit claims to individual arbitration.  It provides that arbitration will take place in the AAA office closest to the domicile of each Plaintiff.  And it provides that the relief that may be awarded in arbitration, including statutorily permissible attorneys' fees, will be the same that would be available in court.

Under these circumstances, there is a *prima facie* showing that each Plaintiff is bound by an arbitration agreement.  And to the extent any Plaintiff contends that the arbitration agreement is somehow invalid or unenforceable, it is *her* affirmative burden to establish a defense and overcome the strong presumption in favor of arbitration.  *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (explaining that once the defendant established the existence of an arbitration clause governing the dispute, the burden shifted to the party opposing arbitration to raise any affirmative defense thereto); *accord Pinnacle*, 55 Cal.4th at 236 ("[T]he party opposing arbitration bears the burden of proving any defense.").

## C. *Plaintiffs' Claims Fall Within the Broad Scope of the Arbitration Agreement*

Given the applicability of the FAA and Plaintiffs' agreement to arbitrate disputes, the only other question is whether their claims fall within the scope of that

agreement.  *See Mitsubishi*, 473 U.S. at 626-28; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  They plainly do.  The arbitration agreement common to each Plaintiff explicitly requires arbitration of "*all* disputes, claims, questions, or controversies of any kind or nature arising out of or relating to this Contract," including "*any* alleged violation of any *state or federal statute*, regulation, law or order of any kind."  (Donaldson Decl., Exs. F at 3; G at 3; H at 3 (emphases added) (mentioning, for example, claims for "wage-and-hour violations" or "any other claim based on an alleged employment relationship").)

Here, the arbitration agreement has a particularly broad scope that covers all of Plaintiffs' claims.  The gravamen of the Complaint is that each Plaintiff "was hired by Defendant[]"; was misclassified as an independent contractor "when the true classification should have been that of 'employee'"; and was subject to "illegal employment practices resulting in violations of the Fair Labor Standards Act, the California Labor Code and California Business and Professions Code and other state laws against employees of Defendant[]."  (Compl., ¶¶ 1-2, 8-10.)  Plaintiffs allege that, as a result of this purported error, AIL failed to pay proper wages and overtime, provide meal and rest breaks, pay all wages due upon termination/discharge, provide correct itemized statements, and pay expense reimbursements in violation of the FLSA and state laws.  (*Id.*, ¶¶ 12-15, 31.)  Plaintiffs "seek relief on behalf of themselves and all similarly situated employees," and purport to assert the first through ninth causes of action in the Complaint on an individual, class, and/or collective basis.  (*Id.*, ¶¶ 3, 95-172.)

Thus, Plaintiffs' claims presuppose compensable relationships with AIL, which arise out of and relate to the agent applications and contracts signed by Plaintiffs.  And each claim—including those for "wage-and-hour violations" or "based on an alleged employment relationship"—asserts a violation of some "state or federal statute, regulation, law or order."  (Donaldson Decl., Exs. F at 3; G at 3; H at 3.)  There is no reasonable dispute that Plaintiffs' claims fall squarely within the

-17-

broad scope of the arbitration agreement here,[9] and are the types of claims that courts routinely find arbitrable.  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Weiss v. Vidyo, Inc.*, No. 11-cv-05663-NC, 2012 WL 13042819, at *4 (N.D. Cal. Feb. 1, 2012).

### D.    Classwide Arbitration Is Not Permissible

It is equally clear that arbitration of Plaintiffs' claims must be pursued on an individual basis.  It is well-settled that the Court must enforce the parties' arbitration agreement as written, including the parties' agreement that the arbitration proceed on an individual, non-class basis.  *See, e.g.*, *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013); *Concepcion*, 563 U.S. at 343-44.  Here, Plaintiffs have waived their right to proceed via a class or collective action:  the arbitration agreement common to each Plaintiff provides that disputes must be arbitrated and that arbitration must proceed "on an individual, not a class [or] collective" basis. (Donaldson Decl., Exs. F at 3; G at 3; H at 3.)  In light of this unequivocal language, Plaintiffs must arbitrate their respective claims individually.  *Epic*, 138 S. Ct. at 1619 (reaffirming enforceability of class action waivers and explaining, "[i]n the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings").

---

[9] Even if there were room for doubt that the arbitration agreement encompasses Plaintiffs' individual claims—which there cannot be here—any doubts "should be resolved in favor of arbitration."  *United Steelworkers of Am. v. Warrior & Gulf. Nav. Co.*, 363 U.S. 574, 582-83 (1960) ("an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *Hurley v. Emigrant Bank*, No. 3:19-CV-0011-B, 2019 WL 5537330, at *10 (N.D. Tex. Oct. 25, 2019) (concluding "all doubts are resolved in favor of arbitration" where the plaintiffs "raise[d] allegations of substantially interdependent and concerted misconduct by both the [nonsignatories] and [a signatory]").

### E.    *Request for Stay Pending Arbitration*

In addition, if this matter is not transferred and this Arbitration Motion is reached, AIL respectfully requests that the Court stay proceedings in this case, including discovery, until a final determination on this Arbitration Motion and whether individual arbitration should be compelled if so.  Granting a stay of discovery while this threshold issue of arbitrability is resolved will preserve the advantages and expediency of arbitration and protect against the unnecessary expense of class- and collective-wide discovery.

If the Court reaches and enforces the arbitration agreement at issue, "responsibility for the conduct of discovery lies with the arbitrators," not the Court. *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002) (citing 9 U.S.C. § 7); *see also Corpman v. Prudential-Bache Secs.*, Inc., 907 F.2d 29, 31 (3d Cir. 1990) (quoting *Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988)) ("An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules."); 9 U.S.C. § 3 (providing that "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall on application of one of the parties stay the trial of the action . . . .").  Permitting any discovery—before a court decides the threshold arbitration issue—may force the parties to bear expenses for discovery that the arbitrator may not ultimately permit, thus negating AIL's potential right to have an arbitrator manage discovery.

Granting a temporary stay of discovery while the threshold issue of arbitrability is resolved will maintain the status quo while protecting AIL from the serious prejudice of losing the advantages of arbitration—speed and economy.  *See, e.g.*, *Norman v. Travelers Ins. Co.*, No. 3:19-CV-2351-S-BN, 2019 WL 6250782, at *2 (N.D. Tex. Nov. 22, 2019) ("Accordingly, all discovery-related and other pre-trial deadlines are STAYED pending the Court's ruling on the Motion to Compel Arbitration . . . ."); *Mahamedi IP Law, LLP v. Paradice & Li, LLP*, No. 5:16-CV-

-19-

02805-EJD, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (noting "[c]ourts routinely grant stays" pending the determination of a motion to compel arbitration); *Hill v. Asset Acceptance, LLC*, No. 13-CV-1718-BEN-BLM, 2014 WL 1289578, at *2 (S.D. Cal. Mar. 27, 2014) ("[D]iscovery is premature in light of the pending motion to compel arbitration.").

## IV.   CONCLUSION

For all the foregoing reasons, if this matter is not transferred and this Arbitration Motion is reached, Defendant AIL respectfully requests that the Court grant this motion and compel Plaintiffs Mobley, Rai, and Bell to pursue their respective individual claims on a non-class or collective basis in arbitration, and stay all proceedings in this matter pending completion of individual arbitration.

DATED:  December 23, 2020

KING & SPALDING LLP
ALBERT GIANG
ARWEN R. JOHNSON

CALDWELL HAMMER LLP
JEFFREY M. HAMMER

By   /s/ Albert Giang
　　ALBERT GIANG

Attorneys for Defendant
AMERICAN INCOME LIFE
INSURANCE COMPANY