**KING & SPALDING LLP**
ALBERT GIANG (SBN 224332)
 *agiang@kslaw.com*
ARWEN R. JOHNSON (SBN 247583)
 *arwen.johnson@kslaw.com*
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355
Facsimile:  (213) 443-4310

**CALDWELL HAMMER LLP**
JEFFREY M. HAMMER (SBN 264232)
 *jhammer@caldwellhammer.com*
633 West Fifth Street, Suite 1710
Los Angeles, California 90071
Telephone: (213) 712-8078

Attorneys for Defendant
AMERICAN INCOME LIFE
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATALIE BELL, GISELE MOBLEY, and ASHLY RAI, AND JOHN TURNER, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY, an Indiana Corporation, NATIONAL INCOME LIFE INSURANCE COMPANY; and Does 1-20,<br><br>Defendants. | Case No. 2:20-CV-07046-MWF-PJW<br><br>**DECLARATION OF KEVIN DONALDSON**<br><br>**[Motion to Sever and Transfer the Eighth and Ninth Causes of Action; Motion to Dismiss Non-California Based Claims; Motion to Compel Individual Arbitration; Declaration Jeffrey Hammer with Exhibits and [Proposed] Order filed concurrently herewith]**<br><br>Hon. Michael W. Fitzgerald<br>Courtroom 5A<br><br>**Date: March 8, 2021**<br>**Time: 10:00 a.m.** |

# DECLARATION OF KEVIN DONALDSON

I, Kevin Donaldson, declare as follows:

1.     I am Director of Agency Administration for Defendant American Income Life Insurance Company ("AIL").  I have worked for AIL for over 13 years.  During my time at AIL, my job responsibilities have included overseeing AIL's onboarding process when prospective or existing independent sales agents apply and contract with the company.  I am personally familiar with the records maintained by AIL relating to agent applications and contracts.  In preparing this declaration, I have reviewed records and agent files, created and maintained by AIL in the usual course of business, relating to the plaintiffs in this lawsuit.  I have personal knowledge of the matters set forth herein or have acquired the knowledge by reviewing and analyzing the business records kept by AIL in the usual course of business.  If called as a witness, I could and would testify competently thereto, under oath.

2.     AIL is an international life insurance company incorporated in Indiana and headquartered in Texas, where its executives maintain their offices, make company-wide decisions, including policy and strategy decisions, and otherwise conduct business on behalf of AIL.  AIL does not have physical offices in California or Florida, except for one public relations office in each state which services enterprise-level relationships with unions and other groups and which does not engage in the direct-to-consumer work undertaken by independent sales agents at issue in this lawsuit.  Nor does AIL have any physical office in New York.  AIL provides life, accident, and supplemental health insurance products to families and individuals in many states.  In the usual course of its business, AIL maintains a file for individuals who apply and contract to sell insurance products with the company, which may include, among other things, agent applications and contracts to sell AIL insurance products.

3. AIL's Agent Appointment Automation System allows an applicant to electronically fill out multiple onboarding forms, including a sales agent contract. AIL does not identify potential candidates and will only send out an invitation from the Agent Appointment Automation System after a local State General Agent ("SGA") initiates the process for a potential applicant. In accordance with AIL's usual and customary processes, at the initiation of a local SGA, AIL sends an invitation from the Agent Appointment Automation System to the individual's email address, inviting him or her to complete onboarding forms and providing him or her with a link to the Agent Appointment Automation System. The Agent Appointment Automation System provides all onboarding forms, including agent contracts, in their entirety for the applicant's review. To proceed, the applicant is further required to input his or her signature and date into the automation system and to indicate his or her agreement by assenting to the placement of that signature and date on each onboarding document that requires a signature, including the agent contract.

4. Alternatively, some individuals sign and date onboarding forms, including agent contracts, by hand.

5. Prospective agents who seek to sell AIL insurance products must sign and submit onboarding documents. Individuals may sign and submit different agent applications and contracts over the course of their relationship with AIL, depending on their personal circumstances and sales performance. Agent applications and contracts are submitted to, approved by, and countersigned by the local SGAs with whom individuals affiliate for purposes of selling AIL products. Depending on how materials are submitted, SGAs can approve and sign agent applications and contracts electronically through the Agent Appointment Automation System or by hand. When an individual completes the regulatory

requirements to sell insurance (*e.g.*, state licensure) and sells their first policy, AIL signs the agent contract.

6. I have reviewed records and agent files that AIL maintains in the usual course of business relating to Plaintiffs Gisele Mobley, Ashly Rai, and Natalie Bell. The records and agent files were created and maintained in the usual course of AIL's business. The facts below pertain to the last agent application and contract I found for the relevant periods each Plaintiff alleged in the Complaint.

**GISELE MOBLEY**

7. On November 19, 2018, at the initiation of a local SGA, AIL sent Gisele Mobley an invitation from AIL's Agent Appointment Automation System to Ms. Mobley's email address, inviting her to complete onboarding paperwork and providing her with a link to the Agent Appointment Automation System.

8. On November 19, 2018, Gisele Mobley signed an agent contract via the Agent Appointment Automation System. The entire agent contract was presented for Ms. Mobley's review, and Ms. Mobley was required to agree by assenting to the placement of her signature and date on the agent contract. Attached hereto as **Exhibit F** is a true and correct copy of Gisele Mobley's agent contract. The agent contract contains an arbitration provision, under the capitalized and bolded heading "**ARBITRATION**," that requires Ms. Mobley, her State General Agent, and AIL to arbitrate any disputes through binding individual arbitration.

**ASHLY RAI**

9. On March 27, 2018, at the initiation of a local SGA, AIL sent Ashly Rai an invitation from AIL's Agent Appointment Automation System to Ms. Rai's email address, inviting her to complete onboarding paperwork and providing her with a link to the Agent Appointment Automation System.

10. On March 27, 2018, Ashly Rai signed an agent contract via the Agent Appointment Automation System. The entire agent contract was presented for Ms. Rai's review, and Ms. Rai was required to agree by assenting to the placement of her signature and date on the agent contract. Attached hereto as **Exhibit G** is a true and correct copy of Ashly Rai's agent contract. The agent contract contains an arbitration provision, under the capitalized and bolded heading "**ARBITRATION**," that requires Ms. Rai, her State General Agent, and AIL to arbitrate any disputes through binding individual arbitration.

### NATALIE BELL

11. On December 27, 2017, at the initiation of a local SGA, AIL sent Natalie Bell an invitation from AIL's Agent Appointment Automation System to Ms. Bell's email address, inviting her to complete onboarding paperwork and providing her with a link to the Agent Appointment Automation System.

12. On December 27, 2017, Natalie Bell signed an agent contract via the Agent Appointment Automation System. The entire agent contract was presented for Ms. Bell's review, and Ms. Bell was required to agree by assenting to the placement of her signature and date on the agent contract. Attached hereto as **Exhibit H** is a true and correct copy of Natalie Bell's agent contract. The agent contract contains an arbitration provision, under the capitalized and bolded heading "**ARBITRATION**," that requires Ms. Bell, her State General Agent, and AIL to arbitrate any disputes through binding individual arbitration.

* * * * *

13. Agent applications and contracts like those at issue are generated in Texas, sent between other states and Texas, and electronically stored in agent files in AIL's home offices in Texas. In accordance with AIL policy, insurance

applications from out-of-state customers are sent to Texas.  Policy underwriting is done in Texas, and policies are issued in Texas.  Agent commission payments are determined in Texas, and tax forms reflecting payments to agents are issued from Texas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was signed on December 23, 2020, in Waco, Texas.

*Kevin Donaldson*
_____
Kevin Donaldson